**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Quido Iannacone, | No. CV-22-01599-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| International Brotherhood of Electrical Workers Pension Benefit Fund, | |
| Defendant. | |

In this ERISA action, Plaintiff Quido Iannacone, who is proceeding *pro* se, challenges the denial of his claim for pension benefits administered by Defendant International Brotherhood of Electrical Workers Pension Benefit Fund ("PBF"). For the following reasons, the denial of benefits is affirmed.

**RELEVANT BACKGROUND**

Plaintiff has been a member of the International Brotherhood of Electrical Workers ("IBEW") since February 1, 1956. (Doc. 16-1 at 42.) Under IBEW's constitution, "[a]n 'A' member who retires from the electrical industry after December 31, 2006, shall be entitled to benefits in accordance with [certain] rules of eligibility."[1] (Doc. 16-2 at 1.) One of those rules is that "[i]t is a condition for admission to pension benefits, including vested pension right and continuation thereof, that the member shall not perform any work of any kind coming under the I.B.E.W.'s jurisdiction." (*Id.* at 4.) Also, although a "retired

---

[1] It is undisputed that Plaintiff was an "A" member.

member shall be permitted to attend L.U.[2] meetings, and, with the L.U.'s approval, have a voice at such meetings," such a person "shall not have a vote." (*Id.*)

In February 2006, Plaintiff asked to begin receiving his IBEW pension benefits. (Doc. 16-1 at 42.)

In March 2006, Plaintiff wrote a letter to the international president of IBEW, requesting that his A membership be transferred to a B.A. card upon approval for his pension benefits. (*Id.* at 40.) In relevant part, Plaintiff explained: "As an A member, I have to decide whether to go on pension or keep my card active. I have reached a point in my life that says I should request pension benefits." (*Id.*) In response, PFB Trustee Jon Walters explained to Plaintiff that if his card was updated to B.A. status, he would, in compliance with Section 6(a) of Article XI of the IBEW constitution,[3] lose his "continuous good standing, which would cause the loss of pension and death benefits." (*Id.* at 38.)

On April 12, 2006, Plaintiff was approved for early retirement along with an $184 monthly pension. (*Id.* at 18.) The accompanying letter further instructed Plaintiff that "no further dues payments to the International Office will be required of you." (*Id.*)

On July 11, 2013, Plaintiff wrote another letter to the then-international president of IBEW explaining that he was concerned about the fact that retired members "give up the right to vote in local union affairs." (*Id.* at 14.) Plaintiff explained that he had "no intention of picking up the tools" but wanted to maintain his "pension of 184 dollars per month" and the privileges accorded to him by paying dues. (*Id.*) He proposed "allow[ing] retired A members to have an option without giving up their pension." (*Id.*)

On January 20, 2016, Scott Barker, the Business Manager of IBEW Local Union 266, sent a letter to the IBEW Pension Department explaining that "as of February 1, 2016,

---

[2] L.U. means local union.

[3] Section 6(a) of Article XI provides: "Any period of membership used in determining eligibility or in computing benefits shall include only consecutive years of 'A' membership in good standing in the IBEW, except that years of membership when on pension or disability pension shall not be counted. Any member that transfers from 'A' membership status to 'BA' membership status or who is dropped from membership after six months' delinquency in dues payments or who has accepted Honorary Withdrawal Card status shall not be considered in good standing for purposes of determining eligibility for or in computing benefits under this Article." (Doc. 16-2 at 3-4.)

[Plaintiff] will be redepositing his 'A' ticket into Local 266 and returning to his trade as a Journeyman Lineman. Please freeze his pension until further notice." (*Id.* at 27. *See also id.* at 16 [confirming Plaintiff's good standing as an A member as of January 20, 2016].)

On April 10, 2020, Plaintiff wrote a letter to PBF requesting reinstatement of his pension benefits. (*Id.* at 19. *See also id.* at 31.) Plaintiff acknowledged that "[f]our years ago I reinstated my card, came off pension to participate in the local union 266." (*Id.* at 19.) Plaintiff asserted: "I have not worked in the electrical contracting industry, why can't I receive my PBF pension so long as I am not actively working at the trade. I would like to continue paying my per capita, my out of jurisdiction dues and my PBF dues." (*Id.*) Plaintiff's rationale for continuing to pay dues despite not working the trade was that he was being treated "as a second-class citizen . . . at the local"—meaning Plaintiff was not being granted the same opportunity to speak that he previously enjoyed when attending meetings at his local union. (*Id.* ["The former business manager before sending me a letter saying that he would deny my re-upping my card tried to muzzle me at the local union meetings that I attend. I know what the Constitution reads and I know while I'm on pension all dues and per capita are waived and that I had a voice if granted by the union. The business manager thought that he was the union."].)

On July 8, 2020, PBF Trustee Kenneth Cooper responded to Plaintiff's request for reinstatement of pension benefits. (*Id.* at 31.) The letter explained that Plaintiff's request was denied because "IBEW records show you were placed in a return to trade status effective February 2016. . . . Unfortunately, you cannot be placed back on PBF pension while continuing to pay dues." (*Id.*) Plaintiff was advised that "once you are ready to stop paying dues, please notify your local union office to place you back on PBF pension." (*Id.*)

On July 13, 2020, Plaintiff sent a letter to Cooper explaining that his "intention in 2016 was to run for union office" and that he "never violated the prohibition on work." (*Id.* at 12.)

On September 3, 2020, Plaintiff sent a letter to IBEW's International Executive Council ("IEC") explaining:

> I . . . wish to appeal the letter sent to me from Brother Cooper dated July 8, 2020. I have enclosed correspondence of interest and other pieces of information. I ask that all suspended pension payments withheld be paid to me. I also demand that I have all the rights afforded to as a paid member be continued as I receive my pension benefits. I have not worked with the tools since 2004.

(*Id.* at 8.)

On January 8, 2021, the IEC denied Plaintiff's appeal and affirmed Cooper's decision. (*Id.* at 1-2.) The IEC cited Article XI, Section 6(c) of the IBEW constitution, which provides that "the per capita taxed owed by 'A' members who are otherwise eligible for pension benefits is waived." (*Id.*) The IEC continued: "This reflects the long-standing position of the IBEW and the IEC that the payment of dues (and active participation in one's local union) is inconsistent with the receipt of retirement benefits. Active members are therefore precluded from receiving pensions, and retirees are precluded from participation in local union affairs." (*Id.* at 1.) The IEC emphasized that the same interpretation is articulated in "Questions and Answers Concerning the Provisions and Procedures of the IBEW Pension Benefit Fund, question and answer 69, which states that, 'A member receiving pension benefits is not required to pay any L.U. dues or assessments. The member's status in his local union is, in effect, that of an honorary member. Thus, the member's participation in L.U. meetings is limited.'" (*Id.*) Therefore, the IEC concluded: "[W]e have determined that you are not eligible to receive a pension for any month in which you paid dues to your local union. You will be eligible to receive a retirement benefit at such time that you agree to forgo active participation in your local union and your dues payments cease. . . . For the above reasons, the appeal of the denial of reinstatement of your PBF benefit is affirmed." (*Id.* at 1-2.)

On July 11, 2022, Plaintiff filed a complaint in Maricopa County Superior Court. (Doc. 1-2.) The complaint, which seeks relief under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), alleges in relevant part as follows:

> Defendant has stopped my pension payment when I proceeded to establish my right to run for office in the I.B.E.W. local 266 elections. The I.B.E.W. Classified me as working with the tools and therefore stopped my pension. I am classified as an A-card member since I joined the I.B.E.W. in Feb.1956.

- 4 -

> My pension dues is funded by my monthly payments with no contribution from the I.B.E.W. I have not worked since 2005. The I.B.E.W. waived my per-capita dues and made me a honorary of which I did not want and did not give the option to maintain my union card.

(*Id.* at 3-4.) As damages, Plaintiff seeks "[d]enied pension payments since March 1st[,] 2016 till present in the amount of 184.00 dollars a month." (*Id.* at 6.)

On September 20, 2022, Defendant timely removed this action to federal court. (Doc. 1.)

On November 15, 2022, Defendants filed the administrative record. (Doc. 16.)

On February 15, 2023, Defendant filed the pending motion for summary judgment, which is now fully briefed. (Docs. 22-24, 26.)[4]

**DISCUSSION**

I. <u>Legal Standard</u>

As noted, Plaintiff's claim is governed by § 502(a)(1)(B) of ERISA. That provision states that a "participant or beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

"District courts review a decision to deny or terminate benefits under an ERISA plan 'under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 981 (9th Cir. 2005) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "When the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits, that determination is reviewed for abuse of discretion." *Id.*

Here, Section 6(h) of Article XI of the IBEW constitution states:

> *Interpretations, Definitions and Decisions.* The I.E.C. is hereby granted discretionary authority to make definitions of the terms used in this article of the Constitution and to make interpretations of or construe these constitutional provisions and its Rules and Regulations which shall be final

---

[4] Plaintiff also filed a notice (Doc. 25) that reiterates his demand for $15,456 but includes no additional argument.

- 5 -

>and binding. The I.E.C. is also granted discretionary authority to determine eligibility for benefits and the decisions of the I.E.C. on all questions arising hereunder, including cases of eligibility for, and computation of the amount of, benefits shall be final and binding. No benefits are authorized other than those expressly stated in the I.B.E.W. Constitution and the Rules and Regulations of the I.E.C.

(Doc. 16-2 at 5.) This language satisfies the *Firestone* test—the IEC has the "discretionary authority to determine eligibility for benefits" as well as the discretionary authority to "construe the terms of the plan." *Gatti*, 415 F.3d at 981. *See also Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) ("[W]e have repeatedly held that similar plan wording—granting the power to interpret plan terms and to make final benefits determinations—confers discretion on the plan administrator."). Therefore, the default standard of review in this case—subject to Plaintiff's claims of procedural irregularity, which are addressed *infra*—is abuse of discretion.[5]

II.   Review Of The IEC's Decision

   A.   **The Parties' Arguments**

Defendant's arguments generally mimic the rationale of the IEC. (Doc. 23 at 7-10.) Specifically, Defendant argues that section 6(c) of Article XI of the IBEW constitution waives the "per capita tax" when a member is "approved for pension benefits." (*Id.* at 7-8.) According to Defendant, this provision "reflects the long-standing position that the payment of dues (and active participation in one's local union) is inconsistent with the receipt of retirement benefits." (*Id.* at 8.) Defendant further argues that there is "no dispute

---

[5] Defendant argues that the applicable standard of review is arbitrary-and-capricious review. (Doc. 23 at 6-7.) However, *Firestone* explicitly rejected that standard. *Firestone*, 489 U.S. at 114 ("Without more, we cannot ascribe to Congress any acquiescence in the arbitrary and capricious standard."). The Ninth Circuit has repeatedly confirmed, in the years since *Firestone* was decided, that the ordinary standard of review in this context is abuse of discretion. *See generally Wit v. United Behav. Health*, 58 F.4th 1080, 1096 (9th Cir. 2023) ("Where the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, we ordinarily review the plan administrator's decisions for an abuse of discretion.") (citation omitted). *Accord O'Rourke v. N. Cal. Elec. Workers Pension Plan*, 934 F.3d 993, 998 (9th Cir. 2019); *Day v. AT & T Disability Income Plan*, 698 F.3d 1091, 1096 (9th Cir. 2012); *Gatti*, 415 F.3d at 981; *Abatie*, 458 F.3d at 971 n.8 (deeming "irrelevant" a case decided before *Firestone*, because that case provided "analysis of the extant 'arbitrary and capricious' standard").

here that Plaintiff sought to receive a retirement benefit from PBF while at the same time, refusing to forgo the rights of active membership. He admits as much and has kept his card active by continuing to pay dues through the date hereof. It is perfectly clear from Plaintiff's correspondence to the IBEW that he *understood* PBF's eligibility rules, he just does not *like* them." (*Id.*) Defendant argues that the IEC's denial of benefits was reasonable given that Plaintiff "continued to pay dues and involve himself in local union affairs as if an A member, not a retiree" and is particularly reasonable in light of the IEC's interpretive discretion as set forth in section 6(h). (*Id.* at 9.) Defendants summarize their position as follows: "However aggrieved Plaintiff may feel by the rule, Section 502(a) of ERISA provides a cause of action for a participant wrongly denied benefits per the terms of the plan and ERISA. It does not give rise to a cause of action for participants who seek to amend the terms of the plan or to change a decades-long policy of the sponsoring labor union." (*Id.* at 10.)

Although Plaintiff's response brief is not a model of clarity, Plaintiff seems to argue that the following actions (or lack thereof) violated the IBEW constitution: (1) he had "[n]o notice of [his] right to bring forth a civil action"; (2) he was not informed of his "right to representation"; (3) the IEC failed to issue a "timely decision within 5 days of denial"; (4) "no regularly scheduled meeting [of the IEC] was ever held" in December 2020; (5) IBEW leadership did not respond to his request for letters, audio-video footage, or a telephone log from the IEC's December 15, 2020 meeting; and (6) he received no response from the IBEW President regarding the "clarification on rights of pensioned members." (Doc. 24 at 1-4.) In a related vein, citing the "Summary Plan Description for the I.B.E.W. Pension benefit Fund Revised August 2019," Plaintiff asserts that "no one, including your employer, your union, or any other person, may fire you, force you to drop 'A' membership, or otherwise discriminate against you in any way to prevent you from obtaining a pension benefit or exercising your rights under ERISA." (*Id.* at 4.)

In reply, Defendant argues that the IEC's decision should be upheld because "the plan documents contain the requisite grant of discretionary authority, there is no conflict

of interest, and there was no 'wholesale and flagrant' procedural violation that deprived Plaintiff of a full and fair review." (Doc. 26 at 4-5.) More specifically, Defendant first contends that, "[a]t most, the procedural violations Plaintiff alleges are merely factors that may be considered by the Court in determining whether there was an abuse of discretion by the IEC." (*Id.* at 2.) Second, Defendant argues that Plaintiff received notice of his right to sue "in the final letter from the IEC considering Plaintiff's renewed request for pension" and even if he lacked the required notice, "Plaintiff was clearly aware of the right to file suit." (*Id.* at 2-3.) Next, Defendant argues that "[a] plan may not preclude an authorized representative from acting on behalf of a claimant, but there is no affirmative obligation to notify the claimant of that right before proceeding with the claims review process" and that "the Administrative Record is devoid of any suggestion that Plaintiff ever sought representation." (*Id.* at 3, citing 29 C.F.R. § 2560.503-1(b)(4)). Next, Defendant contends that "Plaintiff's allegation that PBF failed to provide him with a timely decision is undermined by his simultaneous claim that no regularly scheduled meeting was ever held. However, even if either of these allegations were true, he would only be entitled to sue the PBF prior to having exhausted the Plan's administrative remedies." (*Id.* at 3-4, citing 29 C.F.R. 2560.530-1(1)(1).) Finally, Defendant argues that "even if all of Plaintiff's allegations are taken as true, the record would remain largely unchanged and Plaintiff would still not be entitled to a pension benefit." (*Id.* at 2.)

B. **Analysis**

1. Plaintiff's Procedural Arguments

Based on Plaintiff's briefing and the Court's review of the record, only two of Plaintiff's procedural arguments have identifiable evidentiary support—first, that Plaintiff was not given the required notice of his right under ERISA to bring a civil action; and second, that Plaintiff had the right not to be forced to give up his "A" membership status.[6]

---

[6] Plaintiff identifies no evidentiary support for his other contentions. Although Plaintiff is proceeding *pro se*, "litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364-65 (9th Cir. 1986). "The Ninth Circuit directs courts 'to make reasonable allowances for pro se litigants and to read pro se papers liberally.'" *Wilson v. JPMorgan Chase, N.A.*, 2020 WL 6262106, *2 (W.D. Wash. 2020) (quoting *McCabe v. Arave*, 827 F.2d 634, 640

As for the former, the PBF rules and regulations provide that an unsuccessful claimant has a right to notice of the right to bring a civil action under § 502(a) of ERISA to challenge the denial. (Doc. 16-3 at 8-9 ["If the IST determines that an individual who has claimed a right to receive benefits under the Plan is not entitled to receive all or any part of the benefits claimed, . . . the notice will provide a description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under ERISA Section 502(a) following an adverse benefit determination."].) However, Cooper's July 2020 letter did not notify Plaintiff that he had a right to sue under § 502(a) of ERISA. (Doc. 16-1 at 31.)

A procedural violation can give rise to *de novo* review of the "administrator's decision to deny benefits," but only when "an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan." *O'Rourke*, 934 F.3d at 998. *See also Abatie*, 458 F.3d at 972 (as a general rule, "a procedural irregularity in processing an ERISA claim does not usually justify *de novo* review"). Otherwise, it is a "matter to be weighed in deciding whether an administrator's decision was an abuse of discretion." *O'Rourke*, 934 F.3d at 998. "When an administrator can show that it has engaged in an 'ongoing, good faith exchange of information between the administrator and the claimant,' the court should give the administrator's decision broad deference notwithstanding a minor irregularity." *Abatie*, 458 F.3d at 972 (citations omitted). But "[e]ven when procedural irregularities are smaller, though, and abuse of discretion review applies, the court may take additional evidence when the irregularities have prevented full development of the administrative record. In that way the court may, in essence, recreate what the administrative record would have been had the procedure been correct." *Id.* at 973.

n.6 (9th Cir. 1987)). However, "district courts lack 'the power to act as a party's lawyer, even for pro se litigants.'" *Id.* (quoting *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007)). *See also Bias*, 508 F.3d at 1219 ("[Plaintiff] maintains . . . that as a *pro se* litigant the district court should have searched the entire record to discover whether there was any evidence that supports her claims. We disagree. A district court does not have a duty to search for evidence that would create a factual dispute.").

Here, even assuming that a procedural irregularity occurred—Defendant argues that no ERISA-related notice was required in Cooper's July 2020 letter because it was not the final step in the claim process (Doc. 26 at 2)—any violation was relatively minor. Although Plaintiff was not initially given notice of his right under ERISA to file a civil suit, Plaintiff still had one more level of internal review at the IEC (Doc. 16-3 at 9), of which Plaintiff availed himself (Doc. 16-1 at 3). In the subsequent letter announcing the IEC's denial of Plaintiff's appeal, the IEC explicitly informed Plaintiff of his "right to bring a civil action under Section 502(a) of ERISA." (*Id.* at 2.) Moreover, Plaintiff was successful in timely filing this action. (Doc. 1-2.)[7] Therefore, there is no concern that the administrative record went underdeveloped or that the irregularity was "wholesale and flagrant." *De novo* review is not warranted on the basis of such a procedural irregularity.[8]

As for the other asserted procedural irregularity, construing Plaintiff's briefing liberally, Plaintiff seems to imply that he has been forced to drop his "A" membership or has in some way been prevented from "obtaining a pension benefit." (Doc. 24 at 4.) These allegations implicate the PFB Summary Plan, which provides in relevant part as follows:

> In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you, force you to drop your "A" membership, or otherwise discriminate against you in any way to prevent you from obtaining a pension benefit or exercising your rights under ERISA.

(Doc. 16-5 at 13.)

Plaintiff's arguments on this point lack merit. Plaintiff was not forced into giving up his "A" membership status but chose to do so in order to become eligible for pension

---

[7] Defendant has not challenged the "timeliness" of Plaintiff's complaint or whether he "exhaust[ed] PBF's administrative remedies." (Doc. 26 at 2-3.)

[8] Similarly, even though the Court has found that many of the other asserted irregularities identified in Plaintiff's brief lack evidentiary support, they would not trigger *de novo* review here for the reasons stated in Defendant's reply even assuming that they were properly supported and substantiated—they did not interfere with the development of the administrative record and do not establish that the administrator engaged in wholesale and flagrant violations or otherwise acted in utter disregard of the underlying purpose of the plan.

benefits. Then, later, he chose to discontinue his pension benefits in order to continue participating in the local union. (*See, e.g.*, Doc. 16-1 at 40 ["I have held off requesting pension status for the sole reason, I did not want to give up my rights to vote and run for union office."]; *id.* at 19 ["Four years ago I reinstated my card, came off pension to participate in the local union 266."].) Although the Court empathizes with Plaintiff's policy disagreement with IBEW's requirement that a member must stop working and stop participating in the local union in order to obtain pension benefits, those are the terms of the plan. *Cf. Wit*, 58 F.4th at 1096 ("ERISA does not 'mandate what kind of benefits employers must provide if they choose to have such a plan.'") (citations omitted). Thus, the fact that the terms of the plan required Plaintiff to choose between the pension benefits and participating in the local union is not a procedural violation.

### 2. Merits

"ERISA plan administrators abuse their discretion if they render decisions without any explanation, construe provisions of the plan in a way that conflicts with the plain language of the plan or rely on clearly erroneous findings of fact.'" *Day*, 698 F.3d at 1096 (cleaned up). Thus, "[u]nder the deferential abuse of discretion standard of review, the plan administrator's interpretation of the plan will not be disturbed if reasonable." *Id.* (internal quotation marks and citation omitted). *See also Wit*, 58 F.4th at 1096 ("The administrator's interpretation is an abuse of discretion if the interpretation is unreasonable.").

Here, the IEC found that Plaintiff received his pension from April 2006 through February 2016 (Doc. 16-1 at 1), which Plaintiff does not dispute. The IEC also found that Plaintiff returned to work (and thus "A" status) in February 2016 (*id.* at 1), which is a reasonable interpretation of the record and not clearly erroneous (*id.* 12, 16).

As for the IEC's interpretation of the IBEW constitution, the Court finds no reversible error. Section 6(c) of Article XI provides: "The per capita tax owed by 'A' members who are approved for normal, early, disability or vested pension benefits under this Article is hereby waived." (Doc. 16-2 at 4.) In the document entitled "Questions and

Answers Concerning the Provisions and Procedures of the I.B.E.W. Pension Benefit Fund," one of the questions asks: "Why is a member who is receiving pension benefits permitted to attend L.U. meetings, but allowed only with the L.U.'s approval to have a voice at such meetings, but not vote?" (Doc. 16-4 at 18.) The answer explains: "A member receiving pension benefits is not required to pay any L.U. dues or assessments. The member's status in his L.U. is, in effect, that of an honorary member. Thus, the member's participation in L.U. meetings is limited." (*Id.*) Given these authorities, and in light of the interpretive discretion afforded by section 6(h) of Article XI of the IBEW constitution, it was reasonable for the IEC to conclude that "the payment of dues (and active participation in one's local union) is inconsistent with the receipt of retirement benefits. Active members are therefore precluded from receiving pensions, and retirees are precluded from participation in local union affairs." (Doc. 16-1 at 1.) The IEC also reasonably interpreted Section 6(c) to separate pensioners from active members, and the Constitution's text waiving fees for pension beneficiaries supports that interpretation. This interpretation is also consistent with the guidance that pension beneficiaries are "honorary members" such that they do not pay dues and do not actively participate in local union affairs.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 22) is **granted**.

**IT IS FURTHER ORDERED** that the decision of the IEC is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 4th day of August, 2023.

Dominic W. Lanza
United States District Judge